❏ Original      ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Oct. 05, 2023
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Records and information associated with the cellular device<br>assigned call number 414-419-4427, that is in the custody or<br>control of T-Mobile, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)    Case No.23-1805M(NJ)<br><br>   Matter No. 2023R00201 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 10/19/2023 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: 10/5/2023 @ 5:24 p.m. _____

City and state:   Milwaukee, WI _____

_____
*Judge's signature*

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

**Matter No. 2023R00201**

1.      Records and information associated with the cellular device assigned call number **414-419-4427** (referred to herein and in Attachment B as the "Target Cell Phone"), that is in the custody or control of T-Mobile referred to herein and in Attachment B as the "Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2.      The Target Cell Phone.

Case 2:23-mj-01805-NJ    Filed 10/05/23    Page 3 of 51    Document 1-1

## ATTACHMENT B

## Particular Things to be Seized

## Matter No. 2023R00201

**I.      Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

  a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from August 1, 2023, to present:

    i.   Names (including subscriber names, usernames, and screen names);

    ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii. Local and long-distance telephone connection records;

    iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v.   Length of service (including start date) and types of service utilized;

    vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number

Page 2

("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

Page 3

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the

Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

II.    This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Qian COLLINS, Deante K. BRUCE, Kevin WINSTON, and other identified and unidentified subjects. during the period of August 1, 2022, to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.



CLERK'S OFFICE
A TRUE COPY
Oct 05, 2023

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of *(Briefly describe the property to be searched or identify the person by name and address)* Records and information associated with the cellular device assigned call number 414-419-4427, that is in the custody or control of T-Mobile, as further described in Attachment A | ) ) ) ) ) ) Case No. 23-1805M(NJ) Matter No. 2023R00201 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**See Attachment A.**

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 & 846 | Distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances. |

The application is based on these facts:

**See Attached Affidavit.**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Aaron Hoppe, DEA TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 10/5/2023 _____

_____
*Judge's signature*

City and state: Milwaukee, WI _____     Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**
**Matter No. 2023R00201**

I, Aaron Hoppe, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

**I.     INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call numbers **414-419-4427** (the "Target Cell Phone"), whose service provider is T-Mobile ("Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. The Target Cell Phones are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

Page 1

4. Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

5. I have been a law enforcement officer since May 30, 2007. I am currently assigned to the Waukesha County Sheriff's Department Detective Bureau. I have been assigned to a Federal Drug Task Force (Milwaukee HIDTA) and have been assigned to the Waukesha County Metro Drug Unit in 2012-2013, 2015-2017, and from 2022-Present. I have been a part of hundreds of state and federal investigations related to drug activity.

6. I have received extensive training on the investigation of death investigation, narcotics investigation, cell phone analytics, and I am currently a member of the Board of Directors for the Wisconsin Association of Homicide Investigation.

7. I have conducted investigation ranging from death, drug, property, and child exploitative crimes by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims. I know that when conducting an investigation into many drug investigations, and drug related death investigations that the cellular phone data will be a key piece of evidence based on my training and experience. Individuals who sell and use narcotics will mainly utilize their cell phone to set up a transaction for narcotics utilizing their cellular phone or a special application downloaded on their phone. I

Page 2

know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos, which are also used by drug traffickers.

8.      I have received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons, as well as drug trafficking and related offenses. I have been trained regarding these offenses and has arrested individuals for federal firearms related offenses, as well as drug trafficking offenses. I have also investigated drug trafficking offenses at the state and federal level, including violations of Title 18, United States Code, Section 922(o) and Title 21, United States Code, Sections 841 and 846.  I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media.

9.      I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested.  On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my

investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

10.     I have participated in the execution of numerous search warrants in which weapons, narcotics, and/or evidence of drug trafficking were seized in violation of state and federal laws. I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking. I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession firearms trafficking, and drug trafficking. Additionally, I am familiar with street name(s) of firearms, controlled substances, and respective related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

11.     This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.  This affidavit is also based upon information gained from interviews with cooperating witnesses, and informants, whose reliability is established separately herein.

12.     The investigation to date has included traditional law enforcement methods, including, but not limited to: confidential informants, information from other law enforcement officers; recorded conversations; controlled buys; documentary evidence; physical surveillance; telephone records; electronic surveillance; and physical seizures.  However, because this affidavit is submitted for the limited purpose of securing authorization for search warrants, I have not

Page 4

included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrant.

13.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Qian COLLINS,  Deante K. BRUCE, Kevin WINSTON  and other identified and unidentified subjects.  There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II.  PROBABLE CAUSE

### A.  BACKGROUND AND DEBRIEF OF CONFIDENTIAL SOURCES

14.     Beginning in July 2022, Drug Enforcement Agency (DEA) and the Waukesha Metro Drug Unit, hereinafter referred to as "case agents," began investigating an armed drug trafficking organization (ADTO) operating in the Eastern District of Wisconsin (WI) which involves Qian COLLINS, Deante K. BRUCE, Kevin WINSTON, and other identified and unidentified subjects.  Through confidential sources, undercover controlled buys, physical surveillance, and electronic surveillance case agents have learned this ADTO sells fentanyl, purported to be heroin, methamphetamines, cocaine, ghost guns, and switches (device which converts a semi-automatic firearm into a full-automatic firearm).  Case agents also determined that members of the ADTO utilizing multiple residences and multiple vehicles, including rental vehicles, to store and distribute their narcotics throughout the Eastern District of Wisconsin and

travel out of state to obtain the controlled substances and firearms.

15. On July 1, 2022, a Confidential Source (CS) 1 contacted investigators and stated that he/she has knowledge that Azjuan K. MERIWETHER is selling high quantities of heroin, which MERIWETHER told CS 1 is actually "feti, methamphetamine, cocaine, and "ghost" guns which are untraceable along with switches. Based on my training, experience, and investigation into this ADTO, I understand "feti" to mean fentanyl, which was also verified by CS 1.

16. CS 1indicated that he/she knew that MERIWETHER went by the "rapper" name "Chef Don Juan" and had videos posted on YouTube. I reviewed a YouTube video of "Chef Don Juan" and observed an individual identified as MERIWETHER in the video along with two other individuals. Each individual in the video is handling a handgun or weapon, some with an extended magazine clip and one with a drum magazine.

17. CS 1 further indicated MERIWETHER's had a social media account with Instagram and provide an account name of "thereal_chefdon92." Law enforcement observed MERIWETHER's account of "thereal_chefdon92." MERIWETHER's accounts contained several photos, videos, and music videos of himself, consistent with the account in fact belong to MERIWETHER.

18. The CS 1indicated that he/she has known MERIWETHER for several years. The CS 1 indicated that MERIWETHER had been arrested previously for a heroin related death investigation in Waukesha County, but the case had been dismissed. I confirmed that MERIWETHER was charged in Waukesha County Case 2021CF296 with one count of first-degree reckless homicide on February 17, 2021, but the case was dismissed on July 21, 2021.

19. CS 1 indicated that MERIWETHER sells guns, including "ghost guns," which based on my training and experience are guns which are purchased pre-assembled and are later

Page 6

assembled and are in fact a functioning weapon, but these pre-assembled weapons do not have serial numbers associated and are untraceable. In addition, CS 1 indicated MERIWETHER sells switches for these guns, which based on my training and experience is a small part that is affixed to the weapon providing automatic fire capabilities on what would normally be a semi-automatic weapon. This provides the individual utilizing the weapon with the opportunity to fire a large amount of ammunition in a short time period.

20.     CS 1 stated that MERIWETHER is known to rent hotel rooms in "high class" hotels and use those rooms to cut and package the illegal narcotics that he purchases in large quantities and prepares them for delivery in the area. CS 1 also indicated that there is a "barber shop" in the area of 39th Street and North Avenue in Milwaukee, Wisconsin where MERIWETHER and his "crew" of "workers" cut and package illegal narcotics. CS 1 stated that there are a large number of handguns and long guns at the "barber shop" and indicated that the video that was observed on YouTube of MERIWETHER was produced at the "barber shop."

21.     CS 1 stated that on July 1, 2022, he/she had met with MERIWETHER. MERIWETHER was in possession of several hundred grams of heroin/fentanyl and at least one pound of methamphetamine. CS 1 took pictures of the product along with a vehicle operated by MERIWETHER, and the residence where CS 1 met with MERIWETHER.

22.     CS 1 stated that he/she had set up an anticipated transaction of 50 grams of heroin in exchange for $2,500.00. The planned transaction was to take place on July 5, 2022, in the Waukesha County Area. CS 1 indicated that he/she had contacted MERIWETHER's known telephone number 414-999-6172.

23.     I queried 414-999-6172 using a reliable law enforcement database, which identified the mobile provider as T-Mobile.

24.     I also reviewed Wisconsin Department of Transportation (DOT) Photos, Waukesha County Booking photos, and the YouTube video of "Chef Don Juan" and determined the information provided by CS is in fact regarding the subject identified as Azjuan K. MERIWETHER.

25.     CS 1 information is credible and reliable, CS 1 has given information concerning individuals involved in illegal activities which has been independently verified through this investigation.   The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance. CS 1 is cooperating with law enforcement for consideration on pending criminal drug charges in Waukesha County as well as previous drug charges in Kenosha County. CS 1 has no arrests or convictions relating to dishonesty but has had past arrests or convictions for felony drug offenses and other felony bodily harm offenses.

## B.     UNDERCOVER CONTROLLED BUYS WITH THE ADTO AND IDENTIFICATION OF ADTO MEMBERS AND INDICTMENT

26.     Since July 5, 2022, CS 1, and an undercover agent (UC) with ATF engaged in approximately 18 undercover controlled buys with members of the ADTO including Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, and others.  Generally, during the controlled buys of controlled substances and/or firearms the CS 1 placed a recorded phone call and/or sent recorded text messages to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, provide pre-recorded funds for the purchase of the controlled substance, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement.

Page 8

Additionally, the controlled substances were all weighed and tested positive for the listed substance using Nark II test kits following the printed instructions and the target was identified by the CS 1 through photographs and verified by investigators through DOT photographs, booking photos, and social media. Further firearms were also tested by ATF.

27.     Between July 2022 and March 2023, CS 1 and/or UC obtained approximately 790 grams of heroin, which some of the substances field tested positive for fentanyl also; 240 grams of methamphetamine; and 155 grams of cocaine from the ADTO during the controlled buys. Additionally, during 10 of the undercover controlled buys, the UC obtained approximately 20 firearms from the ADTO. Some of the firearms were installed with a Glock auto-sear device (switch), which converts a semi-automatic firearm into a full-automatic firearm, and other times the UC just purchased a Glock auto-sear device. The UC obtained approximately nine Glock auto-sear devices from the ADTO.

28.     On April 11, 2023, the grand jury returned a thirty-one-count indictment charging Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Tasha M. BROWN, Shannone BROWN, and many others with numerous charges including conspiracy to possess with the intent and distribution of controlled substances, possession of machineguns, firearms trafficking and other drug and gun offenses. *United States v. Meriwether et al.*, case number 23-CR-69.

## C. HOMICIDE OF RODRIGUEZ-PEREZ, ARREST OF FRANKLIN AND BROWN AND SEARCHES

29.     On the morning of March 28, 2023, case agents learned that Daniel RODRIGUEZ-PEREZ ("RICO"), a member of the ADTO who had provided CS 1 with controlled substances during two controlled buys, had been shot and killed on March 27, 2023, at 7:43 pm. Case agents are aware that RODRIGUEZ-PEREZ was a high value target in the MERIWETHER ADTO and

Page 9

ongoing surveillance was being conducted on RODRIGUEZ-PEREZ, including a pole camera that had been set up at his known residence located at 7028 35th Avenue, Kenosha, Wisconsin.

30.     Case agents met with detectives from the Milwaukee Police Department (MPD) regarding the homicide of RODRIGUEZ-PEREZ.   Detectives briefed case agents on the information that was learned during the initial homicide investigation.  The homicide occurred at 3122 North 21st Street (lower unit), Milwaukee, Wisconsin.  This is the residence of Shannone BROWN, Tasha BROWN's sister.  At 7:43 pm, RODRIGUEZ-PEREZ exited the front door of the residence and was talking on a cell phone when he was shot multiple times and was declared deceased on the scene by medical personnel.  There was a witness to the shooting, who was identified as M.N.  M.N. is known to case agents as the current girlfriend of RODRIGUEZ-PEREZ and during the investigation case agents determined that M.N. lived with RODRIGUEZ-PEREZ at the residence located at 7028 35th Avenue, Kenosha, Wisconsin.   During the homicide investigation, RODRIGUEZ-PEREZ's girlfriend, M.N. told law enforcement that FRANKLIN had been threatening RODRIGUEZ-PEREZ prior to his homicide on March 27, 2023.

31.     Case agents learned that a search warrant was conducted at the 3122 North 21st Street after the homicide.  During the search conducted MPD located a handgun, an extended magazine, a drum magazine, loose ammunition, a digital scale, 357.5 grams of a clear glass like substance testing positive for methamphetamine, multiple assorted bottles containing a liquid believed to be "Lean" which in all likelihood contains Promethazine.

32.     Based on the investigation into the ADTO, court authorized electronic surveillance, court authorized GPS data of T. BROWN's vehicle, and jail calls, law enforcement believed FRANKLIN was involved in RODRIGUEZ-PEREZ's homicide.

33.     On March 28, 2023, FRANKLIN and T. BROWN were arrested.  Also on March 28, 2023, case agents executed five search warrants for locations associated with the ADTO including 3907 North 24th Street, Milwaukee, Wisconsin, residence of BROWN and FRANKLIN; 3716 West North Avenue, Milwaukee, Wisconsin, a barber shop used by the ADTO; Economy Inn, Room 118, 7284 West Appleton Avenue, Milwaukee, Wisconsin, hotel room used by BROWN and FRANKLIN; 7028 35th Avenue, Kenosha, Wisconsin 53142, RODRIGUEZ-PEREZ's residence; and SmartStop Self Storage Unit 1032 located at 3420 West Capitol Drive, Milwaukee, Wisconsin, BROWN's storage unit.

34.     At 3907 North 24th Street, Milwaukee, Wisconsin, residence of BROWN and FRANKLIN, case agents noted the residence appeared to be vacant, though several undercover controlled buys occurred just outside this location.  Case agent did not locate anything of value at this location. At 3716 West North Avenue, Milwaukee, Wisconsin, a business used by the ADTO, case agent did not locate anything of value. At Economy Inn, Room 118, 7284 West Appleton Avenue, Milwaukee, Wisconsin, hotel room used by BROWN and FRANKLIN, case agents did not locate anything of value.  It appeared BROWN and FRANKLIN checked out that day.

35.     At 7028 35th Avenue, Kenosha, Wisconsin 53142, RODRIGUEZ-PEREZ's residence, case agents located a firearm that was possessed by RODRIGUEZ-PEREZ's girlfriend's brother, D.N.  D.N. told case agents that, with respect to RODRIGUEZ-PEREZ's homicide, RODRIGUEZ-PEREZ's (Rico's) "people were saying that Rico stole from them."  Based upon their training, experience, and the investigation to date, case agents believe that Rico's "people" referred to FRANKLIN, who was identified as a source of supply for the ADTO, and that when D.N. referred to Rico "stealing" from his "people," he was referring to Rico stealing either drugs or drug proceeds from other members of the ADTO, including FRANKLIN.

36.　　At SmartStop Self Storage Unit 1032 located at 3420 West Capitol Drive, Milwaukee, Wisconsin, BROWN's storage unit, case agents located an AK long gun, kilogram wrappers, and a blender with suspected drug residue.

37.　　MPD Homicide detectives located two firearms with Glock auto-sear devices at 2028 North 39th Street, Milwaukee, Wisconsin during a consent search on March 28, 2023. 2028 North 39th Street, Milwaukee, Wisconsin was occupied by Montree SHAW, Frank SHAW's brother, and his girlfriend Amber HUBANKS. FRANKLIN was present at the residence on March 28, 2023. Consent to search the residence was obtained by MPD and along with Special Agents with the ATF. During the search two handguns were located in a bag and both HUBANKS and M. SHAW denied knowledge of the bag. The firearms were collected for evidentiary purposes and later tested. One of the firearms, a Glock 17, with an attached green laser light and a Glock Auto-Sear device installed on it, matched the firearm utilized in a shooting which occurred at 3122 North 21st Street, on February 10, 2023, where a vehicle belonging to RODRIGUEZ-PEREZ was shot multiple times. The firearm also matched the firearm used in the homicide of RODRIGUEZ-PEREZ on March 27, 2023. Based on statements made by M. SHAW and HUBANKS, along with observations by member of the surveillance team, it is believed that FRANKLIN left the guns at the residence prior to his departure shortly before his arrest.

38.　　On March 28, 2023, case agents also executed a search warrant on T. BROWN's vehicle. Case agents located the following items: two cellphones, a black Adidas bag, an item believed to be a Glock Auto-Sear Switch but later determined to be a back plate to a Glock handgun, a digital scale, 5.3 grams of a substance testing positive for cocaine, 41.4 grams of a black tar like substance testing positive for heroin, and 57.5 grams of a substance testing positive for fentanyl.

39.     Case agents conducted a court authorized forensic extraction of FRANKLIN's telephone 414-519-2009, which was located on March 28, 2023.  Case agents observed that all but 4 communications (24 contacts) on March 28, 2023, between FRANKLIN and Frank SHAW's telephone 414-803-5270 had been deleted.

40.     Following his arrest on March 29, 2023, FRANKLIN provided a mirandized statement to MPD.  FRANKLIN provided MPD a phone number of 414-484-6089, which case agents had previously identified this number as a number for Tasha BROWN.  FRANKLIN stated that he knew "Rico" (RODRIGUEZ-PEREZ) and that was his "boy." ████████████████

████████████████████

41.     FRANKLIN admitted that he and "Rico" sold drug together and sometimes "Rico" would sell on his own.  FRANKLIN stated that he believed the "MP13" was trying to "kill" him and "Rico."  This allegedly stemmed over a $100,000.00 drug debt. FRANKLIN elaborated further indicating that "Rico had borrowed some drugs" and some "bullshit happened" and "Rico" allegedly did not pay back the supplier.  FRANKLIN stated that this caused him to "branch away" from "Rico," therefore losing his connection to his drug supply.  FRANKLIN also provided a partial phone number and Facebook account for RODRIGUEZ-PEREZ.  Based on the investigation into RODRIGUEZ-PEREZ's homicide, specifically witness statements, electronic surveillance, GPS location data, and the firearm located used in the homicide, case agents believed FRANKLIN was being dishonest about the murder.

42.     FRANKLIN admitted that he did make two stops on March 27, 2023, between 7:00 pm and 8:00 pm.  FRANKLIN stated that he sold drugs at two different locations, identified as North 38th and Lisbon and North 39th and Villard in Milwaukee, Wisconsin.  FRANKLIN stated that they drugs were locate inside the Jeep Cherokee were his and stated that he was going to

Page 13

"consume them" according to the report. FRANKLIN identified the "red phone" located inside the Jeep Cherokee as his with an assigned number of 414-254-8676 and stated the other phone in the car was for his "kids." FRANKLIN stated that the residence located at 3122 North 21st Street is a "drop house" for drugs, meaning that there are large amounts of illegal narcotics at the residence that can be purchased.

43. Case agents learned that the MPD interviewed several people for the homicide investigation. One of the individuals interviewed on March 27, 2023, was Monalease BROWN, identified as the sister of Tasha BROWN and Shannone BROWN. M. BROWN stated that she knew Daniel RODRIGUEZ-PEREZ as "Rico" and was aware that RODRIGUEZ-PEREZ was from Texas and is known to "sell drugs." M. BROWN also indicated that RODRIGUEZ-PEREZ had "connections to drug cartels in Texas."

44. M. BROWN indicated that she knew Dontrell FRANKLIN and stated that she was aware that FRANKIN is dating Tasha BROWN and that FRANKIN is a "drug dealer." M. BROWN provided information that there was a dispute over seized funds and bail money, resulting from the arrest of FRANKLIN in August 2022 and subsequent posting of his $20,000 cash bond. M. BROWN then alleged that FRANKLIN "shot up" her residence and this incident is still under investigation. FRANKLIN forced members of her family to pay him (FRANKLIN) an undisclosed amount of money to leave them alone. M. BROWN stated that FRANKLIN was continuing to threaten harm to RODRIGUEZ-PEREZ.

45. On March 31, 2023, M. BROWN reached out to MPD again. M. BROWN stated that she had information related to the incident. She stated that her brother, Frank SHAW, had been calling her off and on throughout the day on March 30, 2023. M.BROWN provided SHAW's telephone 414-803-5270. M. BROWN stated that she received a specific call on March 30, 2023,

between 5:00 pm and 5:30 pm. During this call SHAW informed M. BROWN that he (SHAW) had heard FRANKLIN was a confidential informant. SHAW continued stating "Let that N**** know if he tell that I drove him, I'm telling on all the murders that he and Rico (RODRIGUEZ-PEREZ) did and he and Juan (MERIWETHER) did. SHAW also told M. BROWN that he "told Rico to come outside because the weed man was outside." M. BROWN stated that she did not know if SHAW had called RODRIGUEZ-PEREZ via phone number of Facebook.

46.     On April 8, 2023, Shannone BROWN provided a Mirandize interview to MPD. S. BROWN indicated that RODRIGUEZ-PEREZ was involved in the trafficking or illegal narcotics, specifically "boy and girl," which based on my training and experience, I know to be slang terms for heroin and cocaine. S. BROWN stated that there is another individual, who she identified as Qian COLLINS who is involved with the sale of illegal narcotics with RODRIGUEZ-PEREZ.

47.     S. BROWN stated that the FRANKLIN was arrested in August 2022 for charges related to domestic abuse case where Tasha BROWN was the victim. During that arrest, FRANKLIN was arrested with $35,000.00 in his possession which S. BROWN stated was a mix of FRANKLIN and RODRIGUEZ-PEREZ's. After his arrest, FRANKLIN was given a $20,000.00 cash bail which was paid by members of the ADTO. S. BROWN indicated RODRIGUEZ-PEREZ provide $9,000.00, Qian COLLINS provided $7,000.00, Tasha BROWN provided $1,000.00, and MERIWETHER paid an undisclosed sum. Case agents are aware that FRANKLIN was arrested in August 2002 related to a domestic abuse offense and a large amount of cash was initially seized. Case agents are also aware that FRANKLIN's cash bail was set at $20,000 and it was posted by S. BROWN.

48.     Case agents review the criminal history for Qian L. COLLINS DOB XX/XX1994. COLLINS has prior convictions for a misdemeanor possess/illegally obtained prescription in

Milwaukee County Case 2013CF527 and felony possession with intent to deliver heroin in Milwaukee County Case 2013CF4402. Case agents were able to identify COLLINS's telephone as 414-614-5396.

49.     Case agents reviewed the phone extraction of RODRIGUEZ-PEREZ, following his homicide on March 27, 2023. In RODRIGUEZ-PEREZ's cellphone he had a contact for "Qian"/"Yon" with telephone number 414-614-5396. Case agent searched on CashApp the telephone 414-614-5396, which was connected to an account for "Qian COLLINS."

**D. INVESTIGATION INTO COLLINS**

50.     Case agents learned that CS 2 was arrested in Merrillville, Indiana with several kilos of fentanyl, with possible ties to the MERIWETHER ADTO.

51.     On March 28, 2023, CS 2 provided information to the DEA that CS 2 was contacted by an individual known as "Loco." "Loco" was utilizing the phone number 786-208-2153. "Loco" requested CS 2 to fly to Los Angeles, CA in order to deliver a large amount of illegal narcotics. CS 2 met with "Loco" and stayed in the Los Angeles for a few days before departing. "Loco" provided CS 2 with a black Ford Flex bearing California license plate 9CYF241. "Loco" informed CS 2 that the narcotics were being stored in an aftermarket roof compartment. CS 2 then departed traveling from California to Milwaukee.

52.     CS 2 was instructed to travel to a residence located at 9300 West Riverwoods Drive, Milwaukee, Wisconsin, which CS 2 described as an Airbnb. CS 2 arrived on an unknown date and parked in the garage as instructed and left the residence for a short time. CS 2 returned a short time later and took custody of the Ford Flex and departed the area. CS 2 then was instructed to travel to Cincinnati, Ohio to deliver the remaining narcotics, CS 2 was instructed to contact the number 513-

568-2623 upon arriving in Cincinnati. CS 2 S stated that CS 2 did not meet or see anyone while CS 2 was in the Milwaukee area and a complete debrief of the CS is pending.

53.     CS 2 also provided information regarding "Rico," who she would communicate with using telephone number 414-627-1515. CS 2 indicated "Rico" was a black male. CS 2 indicated she would use telephone number 414-627-1515 to talk with "Rico." CS 2 indicated that "Rico" would direct CS 2 to certain locations to drop off the drugs also.

54.     CS 2 information is credible and reliable, CS 2's information has been independently corroborated and verified by law enforcement, including information obtained from various public databases, physical surveillance, interviews, and telephone toll analysis. CS 2 has made statements against CS 2's penal interest related to CS 2's direct involvement in illegal activity, including the transportation of narcotics. CS 2's has a prior conviction for retail theft, prior arrests for simple domestic assault, and simple assault. CS 2 is cooperating for judicial consideration.

55.     Case agents learned that the number 786-208-2153, has been in contact with COLLINS's telephone 414-614-5396, a total of 107 times between February 2, 2023, to March 28, 2023. Case agents later learned that the 786-208-2153 line was recently deactivated after CS 2 provided information to "Loco" that the vehicle had been towed and the illegal narcotics were seized. COLLINS's telephone 414-614-5396 was the second top contact for the user of 786-208-2153.

56.     Case agents were aware that COLLINS had a role in the ADTO but was unsure of his role initially. Based on interviews conducted after the death of RODRIGUEZ-PEREZ, and preliminary information of COLLINS connections to the 786-208-2153 number that set up the delivery of kilos of fentanyl, case agents believe that COLLINS may supply fentanyl to the ADTO.

57.     Case agents also identified a text message in the cell phone belonging to RODRIGUEZ-PEREZ, where the address 2679 North Holton Street was shared.  Case agents identified 2679 North Holton Street, Milwaukee, Wisconsin as a cellphone store which public databases indicated is owned by Brianna MADDEN, COLLINS's girlfriend and mother of his child.  Case agents located text messages where RODRIGUEZ-PEREZ stated the cellphone store is actually owned by COLLINS.  Based on my training and experience, I am aware that drug traffickers and other engaged in illegal activities may often place legal businesses in family members' or significant other's names in an attempt to distance the legal business from the illegal conduct of a drug trafficker.  There are also a total of 92 calls between COLLINS's telephone number 414-614-5396 and RODRIGUEZ-PEREZ's telephone 414-807-2942 between February 2, 2023, and March 9, 2023.

58.     Case agents reviewed call details record of COLLINS's telephone 414-614-5396, during the investigation and learned between September 23, 2022, and October 27, 2022, COLLINS's telephone 414-614-5396 contacted FRANKLIN's telephone 414-416-0868 a total of 32 times.  Between January 1, 2023, and February 10, 2023, COLLINS's telephone 414-614-5396 contacted FRANKLIN's telephone 414-519-2009, a total of 20 times.  Between January 14, 2023, and February 10, 2023, COLLINS's telephone 414-614-5396 contacted FRANKLIN's telephone 414-254-8676 a total of 5 times.  Between December 13, 2022, to March 29, 2023, COLLINS's telephone 414-614-5396 contacted Shannone BROWN's telephone 414-551-8136 a total of 11 times.  This includes six times on March 28, 2023, the day after the homicide of RODRIGUEZ-PEREZ.  Between September 10, 2022, and December 9, 2022, COLLINS's telephone 414-614-5396 contacted RODRIGUEZ-PEREZ's telephone 414-426-0464 a total of 26 times.  Between November 10, 2022, and March 19, 2023, COLLINS's telephone 414-614-5396 contacted

Page 18

RODRIGUEZ-PEREZ's telephone 414-807-2942, a total of four times. Between January 20, 2023, and January 26, 2023, COLLINS's telephone 414-614-5396 contacted RODRIGUEZ-PEREZ's telephone 512-940-1862 a total of four times. On March 28, 2023, the day after the homicide of RODRIGUEZ-PEREZ, COLLINS's telephone 414-614-5396 contacted M.N.'s telephone 262-914-4276, RODRIGUEZ-PEREZ's girlfriend, a total of two times. Around March 29, 2023, COLLINS's telephone 414-614-5396 was dropped.

59.     Case agents listened to almost a hundred Wisconsin Department of Corrections (DOC) recorded jail calls between COLLINS's telephones 414-614-5396 and 414-588-2760 and inmates. These recorded jail calls were made between January 2023 to present. Case agents became familiar with COLLINS's voice based on these recorded jail calls.

60.     For example, after COLLINS's dropped telephone number 414-614-5396, case agents attempted to determine his new number.    Case agents reviewed records with DOC and as of June 23, 2023, 414-588-2760 was registered through the Wisconsin DOC to Qian COLLINS. This information is received via payment history made to various accounts with the DOC.

61.     Based on Wisconsin DOC records, case agents located a call to telephone number 414-588-2760 on June 23, 2023, at 3:38 pm from the Redgranite Correctional Institution. The call was placed from the account of inmate Anthony L. James. The call was 12:29 in duration and upon the initial conversation, the individual's voice on the 414-588-2760 line appeared to be Qian COLLINS. Based on prior record jail calls, case agents are familiar with COLLINS's voice did confirm that COLLINS was the individual on the call. During the call, the inmate asked COLLINS how his vacation was. Based on the investigation into COLLINS, case agents were aware that COLLINS had just recently been in Houston, Texas and returned on June 18, 2023, or June 19, 2023.

62.     From June 1, 2023, thru June 23, 2023, there were 33 attempted calls from inmates with Wisconsin DOC to 414-588-2760 with 12 of the calls connecting.  During these 12 connected calls, the same individual, believed to be COLLINS, appears to be the person on telephone 414-588-2760. As noted previously, Case agents believe that the person is in Qian COLLINS based on the familiarity of COLLINS voice and DOC information regarding the telephone number.

63.     It is common that those individuals engaged in drug trafficking use more than one cellphone.  This is done to attempt to insults a drug trafficker and to evade law enforcement detections.  Case agents located a second telephone number likely being used by COLLINS.

64.     Case agents identified telephone number, **414-419-4427**, believed to belong to COLLINS.  Case agents initially learned that **414-419-4427** had multiple contacts with number associated to the ADTO.

65.     After identifying telephone number **414-419-4427**, case agents conducted a call detail analysis and learned that there were calls to the following numbers known to be closely associated to or with COLLINS.   Between March 16, 2023, thru June 11, 2023, there have been 281 contacts between telephone number **414-419-4427** and telephone number 414-524-9899. Based on a review of law enforcement database and forensic extractions of RODRIGUEZ-PREREZ's and FRANKLIN's cellphones, case agents believe 414-524-9899 is used by Luz TORRES, who has an unidentified role in this investigation.  TORRES's telephone 414-524-9899 has been in contact with several different targets of the ADTO, including Daniel RODRIGUEZ-PEREZ, and Dontrell FRANKLIN.

66.     Between April 5, 2023, and June 9, 2023, there have been 28 contacts between telephone number **414-419-4427** and telephone number 414-588-2760, which is another number known to be used by COLLINS as previously described.

Page 20

67.    Between January 1, 2023, and May 25, 2023, there were 95 contacts between telephone number **414-419-4427** and 414-349-3267.  Case agents identified 414-349-3267 as a telephone number used by Briana MADDEN. Case agents reviewed law enforcement databases which indicated telephone number 414-349-3267 was connected to MADDEN.  Also, during the investigation, COLLINS was observed operating rental vehicles.  Case agents obtained records that indicated MADDEN was the individual that rented the vehicles COLLINS's operated and provided telephone number 414-349-3267 to the rental company.

68.    Between September 12, 2022, and March 23, 2023, there were 119 contacts between telephone number **414-419-4427** and 414-614-5396.  As described above, COLLINS previous number was 414-614-5396.  This is consistent with 414-614-5396 being changed or dropped by the ADTO after the homicide of Daniel RODRIGUEZ-PEREZ on March 27, 2023.

69.    Case agents learned that there was a suspected fatal heroin/fentanyl overdose on June 10, 2023, Waukesha, Wisconsin.  [Waukesha Police Department (WKPD) IR #23-22176].  Case agents learned that WKPD completed a Forensic Download of the victim's cell phone and observed "drug related messages" between the victim and the phone number **414-419-4427**.  Case agents learned that the victim had sent several messages to **414-419-4427** on June 3, 2023.  The messages were consistent with the victim attempting to purchase heroin from the user of **414-419-4427**.  There was no response from the **414-419-4427**.  Case agents believe that they have identified a separate source of the heroin which led to the fatal overdose of the victim.   The name associated with the **414-419-4427** in the victim's phone was identified as "aaa".

70.    Case agents obtained recorded prison calls through the Wisconsin Department of Corrections and identified calls made from multiple accounts on July 6, 2023, July 11, 2023, July 16, 2023, and July 23, 2023, to COLLIN's telephone 414-588-2760.  The calls were all incoming

Page 21

to COLLIN's telephone 414-588-2760 from the persons currently in custody. Case agents listen to the calls and recognized COLLINS's voice as the person answer the prison calls on telephone 414-588-2760. Case agents determined COLLINS was the person using telephone 414-588-2760 based on the conversation and familiarity of COLLINS's voice. There were no calls that were connected and recorded where someone other than COLLINS's answered telephone 414-588-2760 from prison that were reviewed by case agents.

### a. Call detail records for COLLINS's telephone 414-419-4427

71. Case agents reviewed COLLINS's telephone **414-419-4427** call detail records from June 30, 2023, through July 24, 2023, which had 11,172 contacts. Case agents did not identify 7,967 of the contacts.

72. COLLINS's telephone **414-419-4427** had 29 contacts to the number 414-524-9899. Case agents reviewed cellphones subscriber information which lists to Luz TORRES. and phone extractions from ADTO members determined. Based on review of the cellphone extractions and call detail records from ADTO members, case agents are aware that TORRES is associated several of the main targets of this investigation to include Dontrell FRANKLIN, Azjuan MERIWETHER, Tasha BROWN, and Daniel RODRIGUEZ-PEREZ. Based on the investigation into the ADTO, TORRES is believed to be involved in renting vehicles for members of the ADTO and possibly using heroin/fentanyl.

73. Case agents also observed that COLLINS's telephone **414-419-4427** had 27 contacts with 414-349-3267. As previously described, case agents determined 414-349-3267 to be telephone used by Brianna MADDEN, COLLINS's girlfriend, who COLLINS lives with also.

74.     Case agents also observed COLLINS's telephone **414-419-4427** had 14 contacts with 414-588-2760.  As previously described, 414-588-2760 has been identified as COLLINS's other telephone number.

**b.  Call detail records for COLLINS's telephone 414-419-4427**

75.     Case agents reviewed the number 414-588-2760, which is a known number associated to COLLINS.  While reviewing the call frequency report from June 30, 2023, through July 24, 2023, case agents observed 8, 320 contacts.  Case agents were not able to identify 3, 407 of the contacts.

76.     Case agents observed COLLINS's telephone **414-419-4427** had 625 contacts with Brianna MADDEN's telephone 414-349-3267, Brianna MADDEN.

77.     Case agents observed COLLINS's telephone **414-419-4427** had 155 contacts with 414-852-2533.  Case agents reviewed law enforcement databases and identified 414-852-2533 to be associated with Davontae ARMSTRONG.  Case agents reviewed COLLINS's public social media (quianbacklibhib) which contains photos and videos of COLLINS.  Case agents observed on COLLINS's public social media, ARMSTRONG and COLLINS mixing a substance believed to be "Lean" dated July 4, 2023.  Case agents were able to identify it was ARMSTRONG after review of a photo from a law enforcement databased.

78.     Case agents observed COLLINS's telephone **414-419-4427** had 124 contacts with 414-554-8059.  Case agents determined number 414-554-8059 is associated with Deante BRUCE after review of law enforcement database and records.  BRUCE is the individual who completed a controlled transaction with a UC on June 20, 2023, described in more details below.

**c.  Call detail records for COLLINS's telephone 414-588-2760**

Page 23

79.     Case agents reviewed call records obtained for the known number of 414-588-2760 which is used by COLLINS.  Case agents are aware, based off previously court authorized electric surveillance for telephone number 414-588-2760 that COLLINS was primarily using telephone number 414-588-2760 and not sharing telephone number 414-588-2760.  Further based on the investigation and review of call details records, case agents believe COLLINS does share telephone number **414-419-4427** with other drug trafficking members.  This is further based on location data being received along with contacts to individuals close to COLLINS.

80.     Case agents also observed between August 04, 2023, through September 24, 2023, that telephone number 414-588-2760 had 40 contacts in the same time frame with telephone number **414-419-4427**, which case agents through controlled buys and review of court authorized electronic surveillance believe is used as a shared drug phone by DTO member, believed to be directed by COLLINS.

### E.  CONTROLLED BUYS

81.     On June 15, 2023, case agents were contacted by Washington County (WASO) Metro Drug Unit Investigator Shaun Whealon.  Investigator Whealon had conducted a debrief with CS 3, who provided information for a known drug dealer.  CS 3 knew the drug dealer as "Q."  CS 3 stated that he/she had been purchasing crack cocaine, heroin, and methamphetamine from "Q" since 2021 and estimated he/she have completed "hundreds" of transactions with "Q" during that time frame.  CS 3 stated that he/she would complete transactions for smaller amounts, anywhere from 1-4 grams at a time.

82.     CS 3 stated that the transactions usually occur in the area of East Meinecke Avenue and North Holton Street or West North Avenue and East Oakland Avenue, all in Milwaukee, Wisconsin.  CS 3 indicated that he/she was aware that "Q" owns a cellphone store in the area of

Page 24

North Holton Street, Milwaukee, Wisconsin. Case agents have identified that COLLINS owns a cell phone store identified as Cellular Journie LLC, located at 2679 North Holton Street, Milwaukee, Wisconsin, which is listed in MADDEN's name. CS 3 stated that there have been multiple times another individual, identified as a "Nephew" of "Q" would complete the transaction. CS 3 described this individual as a "younger" black male.

83. CS 3 provided two numbers for "Q", telephone numbers **414-419-4427** and 414-588-7377. CS 3 stated that "Q" primarily utilized the **414-419-4427** line but also utilized the 414-588-7377 line. The 414-588-7377 line was identified as "Q's second number" in the cell phone belonging to CS 3. Investigator Whealon then completed a photo-line-up with CS 3, who confirmed the person she knew as "Q" was in fact Qian COLLINS.

84. CS 3 stated that he/she had sent people to pick up heroin for him/her in the past. CS 3 indicated that he/she would be able to call COLLINS and tell COLLINS that he/she would not be able to make it and that someone else was coming to pick up for him/her.

85. For several reasons, case agents believe CS 3's information is reliable and credible. Substantial parts of CS 3's information have been independently corroborated and verified by law enforcement, including information obtained from various public databases, physical surveillance, and the forensic extraction of CS 3's telephone. CS 3 has made statements against his/her penal interest related to his/her direct involvement in illegal activity, including the distribution of narcotics, and association with members of the ADTO. CS 3 has misdemeanor convictions for Possession of THC, Possession of Drug Paraphernalia, Possession of Cocaine, and Neglecting a Child. CS 3 has felony convictions for Possession with Intent to Distribute THC, Possession of Narcotic Drug, and Bail Jumping. CS 3 is not cooperating for judicial consideration and is not receiving payment for his/her cooperation.

### a. Controlled Buy June 20, 2023, with BRUCE using 414-419-4427

86.    Based on this information, an attempted controlled transaction between COLLINS and an agent acting in an undercover capacity (UC) was planned for the morning of June 20, 2023. Prior to the transaction taking place, Investigator Whealon had CS 3 place a call to COLLINS at telephone number **414-419-4427**. COLLINS was not the individual who answered the phone. CS arranged for a transaction of heroin and cocaine in exchange for $350.00. Once the call was complete, CS 3 stated that the "Nephew" answered and would likely complete the transaction. During the call, CS 3 informed the "Nephew" that he/she could not make it down and would be sending someone else instead. The "Nephew" stated that the other person could come down and directed CS 3 to have that person come to the area of North 42nd Street and North Sherman Boulevard, Milwaukee, Wisconsin and to call the "Nephew" when that person was close.

87.    The UC then traveled to the area and contacted the "Nephew" at telephone number **414-419-4427** line. "Nephew" directed the UC to the alley between North 46th Street and North 47th Street, just north of West Fiebrantz Avenue, Milwaukee, Wisconsin. The UC subsequently exited his/her vehicle and walked into the alley and observed a black Honda Civic bearing Wisconsin license plate AMR- 4746 parked in the alley. The UC noted that there were two individuals in what seemed to be a line at the front driver's side window. The UC observed the operator conduct two hand-to-hand transactions with this individual. The UC then walked up to the operator, who was alone in the vehicle. The UC purchased suspect heroin and cocaine from the operator. The UC also noted that there was at least one other person behind him/her, who appeared to be waiting to purchase narcotics as well. After completing the transaction, the UC returned to his/her vehicle and met with case agents after leaving the area.

88.     The UC turned over the suspected heroin and cocaine to case agents and indicated the individual who completed the transaction was a younger, black male, with a tattoo of the name "Tasha" on his right arm.  The suspected heroin and cocaine were later tested and weighed.  The net weight of the suspected heroin 2.1 grams and tested positive for Fentanyl.  The net weight of the cocaine was 1.4 grams and tested positive for cocaine.

89.     Case agents reviewed used Wisconsin DOC records, booking photos and Wisconsin Department of Transportation photos to identify "Nephew."  Based on the review of these databases, case agents believed "Nephew" was Deante K. BRUCE (DOB XX/XX/1997).  The UC was provided Wisconsin DOT and public viewable social media photos of BRUCE and verified BRUCE as the individual who completed the transaction with the UC and was the operator of the Honda Civic.  Case agents learned that BRUCE was on probation in Wisconsin for a felony Possession of Narcotic Drug and a misdemeanor charge of Carrying a Concealed Weapon regarding Milwaukee County Court Case # 2021CF004261.

90.     From review of DOC records, case agents learned that BRUCE provided a residence address of 9261 West Allyn Street, Unit #F, Milwaukee, Wisconsin.  Also, BRUCE provided his employer as Cellular Journie, COLLINS's cell phone store.  Case agents also review Wisconsin DOT in which COLLINS has a listed address of 9261 West Allyn Street, Unit #F, Milwaukee, Wisconsin.

**b.  Controlled Buy June 27, 2023, with COLLINS using 414-419-4427**

91.     On June 27, 2023, the UC contacted telephone number **414-419-4427**.  COLLINS picked up telephone number **414-419-4427**, which case agents were able to determine based on review of prior calls by COLLINS.  COLLINS instructed the UC to "come to the east side" when questioned if they could meet by the UC.  As the UC approached the general vicinity of the East

Side of Milwaukee, he/she contacted telephone number **414-419-4427**. Based on the voice it appeared to be COLLINS that was using telephone number **414-419-4427**. COLLINS instructed the UC to go to the area of North 19th Street and West North Avenue, Milwaukee, Wisconsin. The UC traveled to that location and subsequently parked in the area of North 19th Street and West Monroe Street. A black Toyota Rav 4, bearing Arizona license plate CWN-7763, pulled up next to the UC and rolled the front passenger window down slightly and instructed the UC to follow. The UC then followed the Rav 4, to an alley between North 18th Street and North 19th Street just south of West Monroe Street. The UC exited his/her vehicle and approached the front driver's side door of the Rav 4. The operator appeared to be alone inside the vehicle according to the UC, but the operator only slightly opened the door during the transaction. The UC stated that he/she observed a large bag of marijuana and a plastic bag containing a tan rock like substance believed to be heroin/fentanyl on the lap of the operator. The operator then stated that he did not have any "Tina." Based on my training and experience, I know "Tina" to be street slang for methamphetamine. The UC then informed the operator he/she was looking for "boy" and completed a purchase of heroin/fentanyl for $400.00 in pre-recorded currency.

92. The substance was later weighed and tested by case agents. The weight was determined to 5.4 grams and tested positive for fentanyl. The UC did not see COLLINS face during the interactions due to the tint and manner in which the door was opened during the transactions. However, the UC was able to see multiple tattoos on the right arm of driver, which were very distinct. The UC later reviewed photos of COLLINS, via COLLINS's public Instagram page. After reviewing photos on COLLIN's Instagram page, which showed COLLINS's tattoos, the UC confirmed that the individual he/she conducted the transaction with was in fact Qian COLLINS based on the similar tattoos.

Page 28

93.     Case agents reviewed audio from the recorded calls and recording device that was activated during the transaction.  After hearing the voice of the operator on the call and during the transaction, case agents believe that it was Qian COLLINS based on the familiarity of COLLINS's voice.

94.     Case agents and members of the surveillance team followed COLLINS after that transaction and witnessed one additional hand to hand transaction between COLLINS and an unknown individual shortly after the transaction with the UC on West Highland Avenue, Milwaukee, Wisconsin.

95.     Case agents determined that the vehicle used by COLLINS during the transaction was rented through Avis/Budget Rental.  Case agents identified that Avis/Budget Rental was also used on two previous rental vehicles operated by COLLINS.  Later, on June 27, 2023, case agents received information from Avis/Budget that the individual on the rental agreement was Brianna MADDEN, who is the girlfriend of COLLINS.  MADDEN also was the listed individual on the two previous rental agreements as well.  Madden listed her address as 2456 North Cramer Street, Milwaukee, Wisconsin, and a phone number of 414-349-3267.  Case agents know that address to be a valid address for MADDEN and COLLINS.  The rental agreement is valid through July 6, 2023.

### c.  Controlled Buy July 12, 2023, with COLLINS using 414-419-4427

96.     On July 12, 2023, the UC contacted **414-419-4427** in anticipation of completing a transaction with BRUCE or COLLINS.  The UC went to the meet location behind a Walgreen's located at 5115 West Capitol Drive, Milwaukee. Wisconsin.  During this transaction, the UC completed a controlled transaction with an individual identified as Kevin WINSTON, who was

later identified with his photo from Wisconsin DOT. During the transaction the UC purchased 6.8 grams of a substance that later tested positive for fentanyl.

97.     WINSTON was alone during the transaction and was operating a Nissan Rogue bearing WI license plate ARE-7654, which did not have a vehicle associated to that registration through the WI DOT. Case agents later learned that the vehicle had been involved in an auto accident in the City of Milwaukee on March 4, 2023, and it was documented that WINSTON was the owner of the vehicle during the investigation. Case agents then learned that WINSTON has a listed WI DOT address of 9261 Allyn Street, Milwaukee, Wisconsin, which is a former address used by COLLINS as previously described. 9261 Allyn Street, Milwaukee, Wisconsin was the address previously reported by BRUCE to agents with the Wisconsin Department of Corrections. Case agents believe that WINSTON and COLLINS are related, and it is believed that they share the same mother, making them biological half-brothers based on review of law enforcement databases.

### d.     Controlled Buy August 24, 2023, with COLLINS using 414-419-4427

98.     On August 24, 2023, the UC contacted **414-419-4427** in anticipation of completing a drug transaction with BRUCE, COLLINS, or WINSTON. The UC went to the agreed upon meet location behind Bethel AME Church located at 4103 North 35th Street, Milwaukee, Wisconsin. During this transaction, the UC completed a controlled buy of narcotics with BRUCE, who case agents previously identified. BRUCE was operating a Nissan Rogue bearing Wisconsin license plate ARE-7654 (Rogue), which did not have a vehicle associated to that registration through the Wisconsin DOT. Case agents are familiar with the Rogue from previous transactions and are aware that the Rogue is known to be operated by WINSTON. The UC did observe that there was an unknown black male in the front passenger seat of the Rogue, who the UC was not familiar

Page 30

with and had no contact with during the drug transaction. BRUCE provided the UC a white plastic surgical glove that contained the controlled substance inside of it during the transaction in exchange for money. During the transaction the UC purchased 14.8 grams of a substance that later tested positive for fentanyl.

e. **Controlled Buy September 13, 2023, with COLLINS using 414-419-4427**

99.     On September 13, 2023, the UC contacted **414-419-4427** in anticipation of completing a transaction with BRUCE, COLLINS, or WINSTON. The UC went to the meet location Chubby's Cheesesteaks located 2232 North Oakland Avenue, Milwaukee, Wisconsin. During the initial call to **414-419-4427** and follow up calls with **414-419-4427**, case agents believed that the individual answering **414-419-4427** was in fact COLLINS based on the familiarity with COLLINS voice.

100.     Case agents had set up pre-surveillance in the area of COLLINS residence located at 2456 North Karmer Street, Milwaukee, Wisconsin. After the UC had arrived in the area of Chubby's Cheesesteaks, case agents observed a black Toyota Camry bearing Illinois license plate FP215094 (Camry), exit the driveway from COLLINS residence. Case agents followed the Camry to Chubby's Cheesesteak, which is approximately one-half mile distance from COLLINS residence.

101.     The UC then received a call from **414-419-4427** and was directed to follow the Camry, which eventually stopped in an alley way in the area of North Farwell Avenue and East Lafayette Place, Milwaukee, Wisconsin. The UC then exited the vehicle and completed the transaction with COLLINS, who the UC is familiar with and positively identified COLLINS. The UC stated that COLLINS was the only individual in the Camry.

Page 31

102.    Case agents continued surveillance on COLLINS after the transaction and confirmed COLLINS was indeed the operator of the Camry when COLLINS stopped and exited the Camry at a Cheb Hut Toasted Subs located at 2907 North Oakland Avenue, Milwaukee, Wisconsin.

103.    Case agents learned that the Camry was a rental vehicle from Avis/Budget rental. Case agents later received information from Avis/Budget that the person listed on the rental agreement for the Camry was Brianna MADDEN, COLLINS' girlfriend as previously described, and resides at the address on North Kramer Street, which is the listed address on the rental agreement.  The vehicle is rented through September 30, 2023, by MADDEN.

### H. Prior Court Authorized Electronic Surveillance

106.    On June 30, 2023, Honorable Judge Stephen C. Dries authorized a warrant for electronic surveillance for COLLIN's cellular telephone number 414-588-2760 and **414-419-4427**, which were served on their respective providers.  These were both later extended by Judge Dries on July 31, 2023.   Review of the court authorized electronic surveillance and call details records, in conjunctions with controlled buys and physical surveillance, are all consistent with COLLINS and other ongoing involvement with drug trafficking.

### I. Service Provider Information

104.    Case agents queried telephone number 414-588-2760 via a law enforcement database, which identified the mobile carrier as US Cellular.

105.    Case agents queried telephone numbers **414-419-4427** via a law enforcement database, which identified the mobile carrier as T-Mobile.

### III.    TECHNICAL BACKGROUND

146.     I believe cellular telephones assigned call numbers **414-419-4427** (the "Target Cell Phone"), whose service provider is T-Mobile ("Service Provider"), a wireless telephone service provider, continues to contain valuable information on this account that could be used as evidence for the possible crimes of conspiracy to possess with the intent to distribute and distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846.

## IV.     JURISDICTION

147.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## V.     TECHNICAL BACKGROUND

148.     Based on my training and experience, I know that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Service Provider's network or with such other reference points as may be reasonably available.

### A. Cell-Site Data

149.     In my training and experience, I have learned that Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data

Page 33

identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

150. Based on my training and experience, I know that Service Provider can collect cell-site data on a historical and prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

**B. E-911 Phase II / GPS Location Data**

151. I know that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

Page 34

152.    As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

153.    I also know that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time, or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

154.    Based on my training and experience, I know that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

155.    Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the

location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

**C. Pen-Trap Data**

156.    Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

**D. Subscriber Information**

157.    Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent

Page 36

or received by a particular device and other transactional records, in their normal course of business.

158.     In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Cell Phone's user or users, the locations of that user or users, and the patterns of that user or users. A frequency analysis of the telephone communications between Qian COLLINS, Deante K. BRUCE, Kevin WINSTON, and other identified and unidentified subjects is material, in that it can establish whether the calls described above are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the cellular devices can establish whether the locations are deviations or consistent with normal patterns. This information is relevant to show whether Qian COLLINS, Deante K. BRUCE, Kevin WINSTON, and others acted-in-concert, by establishing the nature and extent of their relationship, the existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

## V. AUTHORIZATION REQUEST

159.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

160.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

161.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the

Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

162. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

# ATTACHMENT A

## Property to Be Searched

## Matter No. 2023R00201

1.      Records and information associated with the cellular device assigned call number **414-419-4427** (referred to herein and in Attachment B as the "Target Cell Phone"), that is in the custody or control of T-Mobile referred to herein and in Attachment B as the "Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2.      The Target Cell Phone.

**ATTACHMENT B**

**Particular Things to be Seized**

**Matter No. 2023R00201**

**I.      Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from August 1, 2023, to present:

   i.   Names (including subscriber names, usernames, and screen names);

   ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long-distance telephone connection records;

   iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number

Page 2

("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

   viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

    ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

Page 3

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the

Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

II.  This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III.  Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Qian COLLINS, Deante K. BRUCE, Kevin WINSTON, and other identified and unidentified subjects. during the period of August 1, 2022, to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

Page 5